1

2

3

4

5

6

7 **UNITED STATES DISTRICT COURT**

8 **CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

9

10 JUAN MOLINA,

Case No. EDCV 20-00518-SVW (AS)

11               Plaintiff,

**ORDER DISMISSING THIRD AMENDED**

12    v.

**COMPLAINT WITH LEAVE TO AMEND**

13 RALPH DIAZ, et al.,

14               Defendants.

15

16 **INTRODUCTION**

17

18     On December 20, 2019, Juan Molina ("Plaintiff"), an inmate

19 formerly housed at Ironwood State Prison ("Ironwood") in Blythe,

20 California,[1] proceeding <u>pro se</u>, filed a Civil Rights Complaint

21 ("Complaint") pursuant to 42 U.S.C. § 1983.[2] (Dkt. Nos. 1, 1-1,

22 ──────────────────────

23     [1] Plaintiff was recently transferred to Centinela State Prison in Imperial, California. (<u>See</u> Dkt. No. 34).

24     [2] Plaintiff filed the Complaint in the United States District

25 Court for the Northern District of California, which transferred the action to this Court on March 11, 2020, because it concerns

26 alleged incidents at Ironwood, which is located in this District. (Dkt. No. 9). On April 20, 2020, Plaintiff filed an "Objection to

27 Venue," seeking to transfer this action back to the Northern District of California. (Dkt. No. 15). The Court construed this

28 as a motion for transfer of venue pursuant to 28 U.S.C. § 1404(a),

1-2).  On April 17, 2020, the Court dismissed the Complaint, with leave to amend, because it failed to state a claim for relief. (Dkt. No. 14).  Plaintiff subsequently filed a First Amended Complaint (Dkt. No. 30)[3] and a Second Amended Complaint (Dkt. No. 36), which were each dismissed, in turn, with leave to amend (Dkt. Nos. 32, 37).

On November 18, 2021, Plaintiff filed a Third Amended Complaint pursuant to 42 U.S.C. §§ 1983 and 1985 ("Third Amended Complaint" or "TAC").  The Court has screened the Third Amended Complaint as prescribed by 28 U.S.C. § 1915A and 42 U.S.C. § 1997e. For the reasons discussed below, the Court DISMISSES Plaintiff's Third Amended Complaint WITH LEAVE TO AMEND.[4]

---

and denied the motion on April 21, 2020.  (Dkt. No. 16).  On May 19, 2020, Plaintiff filed a Notice of Appeal regarding the Court's Order denying the Motion to Transfer (Dkt. No. 17), which the Ninth Circuit subsequently dismissed for lack of jurisdiction (Dkt. No. 21).

[3] Initially, Plaintiff failed to timely file a First Amended Complaint, which prompted the Court to issue an Order to Show Cause on June 2, 2020 (Dkt. No. 20), followed by a Report and Recommendation on August 11, 2020, recommending that the case be dismissed pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute and obey court orders (Dkt. No. 23).  Finally, after multiple extensions of time, Plaintiff filed a First Amended Complaint on December 30, 2020.  The Court thus vacated the Report and Recommendation on February 24, 2021.  (Dkt. No. 31).

[4] Magistrate judges may dismiss a complaint with leave to amend without approval from the district judge.  McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991).

1

**THIRD AMENDED COMPLAINT**

2

3      The Third Amended Complaint names a total of nineteen

4  defendants. (TAC at 4-12). Eleven of these are named solely in

5  their official capacity: (1) Ralph Diaz, Secretary of the CDCR;[5]

6  (2) Jeffrey Macomber, CDCR Undersecretary of Operations; (3) Connie

7  Gipson, CDCR Director of the Division of Adult Institutions; (4)

8  Howard Moseley, CDCR Director of the Office of Appeals; (5) Jared

9  Lozano, CDCR Assistant Director of High Security, Males, in the

10 Division of Adult Institutions; (6) Kirk Stinson, CDCR Chief of

11 Internal Affairs (Field Operations), Division of Correctional

12 Policy Research and Internal Oversight; (7) Neil McDowell, Warden,

13 Ironwood; (8) R.W. Smith, Chief Deputy Warden, Ironwood; (9) S.

14 Moore, Associate Warden, Ironwood; (10) J. Martin, Correctional

15 Dog Handler, Ironwood; (11) M. Cota, Correctional Staff Service

16 Analyst, Ironwood. (TAC at 4-7, 11-12). The remaining eight

17 defendants are named solely in their individual capacities: (1) H.

18 Liu, Correctional Captain, Ironwood; (2) J. Frias, Correctional

19 Lieutenant, Ironwood; (3) G. Gasgonia, Correctional Lieutenant,

20 Ironwood; (4) J. Zermeno, Correctional Sergeant, Ironwood; (5) S.

21

22      [5] On October 1, 2020, Kathleen Allison was appointed as the
Secretary of the CDCR, replacing Ralph Diaz in that role, as
23 Plaintiff acknowledges. (TAC at 17 n.4); see Cal. Dep't Corr. &
Rehab., "Kathleen Allison, CDCR Secretary," available at
24 https://www.cdcr.ca.gov/about-cdcr/secretary/ (last visited Dec.
14, 2021). Allison should therefore be substituted for Diaz as
25 the proper defendant for claims against the CDCR Secretary in her
official capacity. See Fed. R. Civ. P. 25(d) ("An action does not
26 abate when a public officer who is a party in an official capacity
dies, resigns, or otherwise ceases to hold office while the action
27 is pending. The officer's successor is automatically substituted
as a party.").
28

3

1  Striplin, Correctional Investigative Services Unit ("ISU")

2  Officer, Ironwood; (6) E. Nunez, Correctional ISU Officer,

3  Ironwood; (7) B. Wilson, Correctional Officer, Ironwood; (8)

4  Montgomery, Correctional Officer, Ironwood. (TAC at 8-12).

5

6       Plaintiff alleges that he was a participant in a prisoner

7  hunger strike several years ago at Pelican Bay State Prison in Del

8  Norte County, California ("Pelican Bay"), where he was formerly

9  housed. (TAC at 15). The hunger strike, which had been

10 orchestrated by members of four major California prison gangs,

11 precipitated a prisoner class action suit in the United States

12 District Court for the Northern District of California, against

13 the CDCR and various state officials, regarding the use of

14 indeterminate solitary confinement in California prisons and the

15 use of confidential information in disciplinary hearings at Pelican

16 Bay, among other issues. (See TAC at 15-16); see also Ashker v.

17 Newsom, N.D. Cal. Case No. 09-CV-05796-CW (RMI).[6]   The case

18       [6] In that case, the court recently granted a one-year extension

19 of the settlement agreement to July 15, 2020, because the
   plaintiffs had demonstrated, among other things, "due process

20 violations arising out of Defendants' failure to provide class
   members with adequate notice of the charges and evidence against

21 them and by failing to disclose non-sensitive information or
   evidence that class members could have used to mount a defense at

22 their disciplinary hearings." Ashker, 2021 WL 5316414, at *17
   (N.D. Cal. Apr. 9, 2021), modified, 2021 WL 5339614 (N.D. Cal. May

23 13, 2021). The court found that "[t]he inaccurate or incomplete

24 disclosures that Defendants provided to class members deprived
   class members of the ability to challenge or otherwise raise

25 questions as to the reliability of confidential information that
   could have been or was used against them during their disciplinary

26 hearings." Id. However, on July 12, 2021, the magistrate judge
   in the case recommended denying a further extension of the

27 agreement because, among other things, the plaintiffs failed to

28 sufficiently demonstrate ongoing and systemic due process

4

culminated in a settlement in 2015.[7]  (See TAC at 16); Ashker, 2021 WL 5316414, at *3 (N.D. Cal. Apr. 9, 2021) (describing settlement).

Plaintiff alleges that since that settlement, CDCR officials have viewed the Ashker "hunger strikers" as a threat and have been cracking down on them through a discriminatory "underground policy" of using fabricated evidence against them as grounds to remove them from the general population.  (TAC at 13, 17-18).  Plaintiff claims that he has been a target of this policy since his transfer to Ironwood.  (See TAC at 18-28).

According to Plaintiff, Defendant Nunez, an Ironwood correctional officer, prepared a "falsified" confidential memorandum on September 10, 2018, in which a "paid informant" alleged that Plaintiff was part of a conspiracy to introduce unauthorized controlled substances and cell phones through a "compromised" staff member.  (TAC at 18).  Nunez allegedly placed this false memorandum in Plaintiff's central file, but Plaintiff was not served with notice of it, as required by CDCR regulations, and he was given no "opportunity to contest, challenge or refute"

violations with respect to CDCR's supposed fabrication and allegedly inadequate disclosure of confidential information or CDCR's supposed failure to ensure that the confidential information it uses is reliable.  Ashker, 2021 WL 4310607, at *3 (N.D. Cal. July 12, 2021).  As of this date, that issue remains pending before the district judge in the case.

[7] The plaintiff class for the due process claims in Ashker consisted of all inmates who were "assigned to an intermediate term at the Pelican Bay SHU on the basis of gang validation, under the policies and procedures in place as of September 10, 2012." Ashker, 2019 WL 330461, at *1.

it.  (TAC at 18).  Plaintiff alleges that similar confidential memoranda were later prepared by Defendant Sgt. Zermeno on December 3, 2018, and by Nunez on January 4 and 18, 2019, which were also placed in Plaintiff's file without notice.  (TAC at 18-19).

On January 22, 2019, Defendant Nunez, along with Defendants Martin and Striplin, conducted a search of the Facility D vocational welding classroom and purportedly found drugs and cell phones hidden behind the exhaust ventilation unit in the wall. (See TAC at 19-20; TAC Exhs. D-E).  A Rules Violation Report ("RVR") was subsequently issued based on this search, falsely charging Plaintiff with conspiracy to distribute controlled substances (RVR Log No. 6824745, or "2019 RVR").  (See TAC at 19-21).  Plaintiff was placed in administrative segregation ("Ad Seg").  (TAC at 20). On April 25, 2019, Nunez prepared a supplement to the 2019 RVR which falsely described the search and investigation, stating among other things that "reliable, confidential sources provided intelligence regarding the introduction of narcotics and contraband cellphones by [Plaintiff] and [another inmate, Lopez]."  (TAC at 19-20; Exh. E).  Plaintiff alleges "upon information and belief" that Nunez's "paid informant" had tried to convince Lopez to join a contraband-smuggling conspiracy and had told Lopez there was a "compromised" staff member willing to help.  (TAC at 20 n.6). Plaintiff asserts that he never spoke with any informant or staff member about a smuggling operation.  (TAC at 20 n.6).  Plaintiff thus notes that the confidential memoranda used against him "contain no specific date, time, place, conversation, where [Plaintiff] met with the confidential paid informant; no place

1    where he met with the compromised staff; no description of how he

2    collected or received this drug money, the proceeds from this

3    illegal enterprise, or any other nexus between Plaintiff [] and

4    this alleged conspiracy."[8]   (TAC at 20 n.6).

5

6        At Plaintiff's disciplinary hearing on May 12, 2019, Defendant

7    Lt. Gasgonia, the presiding officer, relied on the confidential

8    memoranda to find Plaintiff guilty of conspiracy to distribute

9

10       [8] Nunez's "Confidential Information Disclosure Form" states
     the following about the confidential information used against
11   Plaintiff in the proceedings:

12       On 1/22/2019 confidential sources identified you inmate
13       Juan MOLINA, CDCR #K30854 collaborated with Inmate Luis
         LOPEZ, CDCR #V23120 responsible for the Distribution of
14       a Controlled Substance(s) at Ironwood State Prison
         (ISP). Specifically, these sources provided reliable
15       information which [led] investigators to a location and
         discovery of a large amount of narcotics and contraband
16       (cellphones) concealed within the Facility D VOC Welding
17       classroom.

18       On 04/03/2019 ISP received the results from the
         Department of Justice Bureau of Forensics Services which
19       identified the controlled substances sent for testing
         results were positive for Heroin and Methamphetamines.
20
         Therefore, you MOLINA are being charged with Conspiring
21       to Distribute a Controlled Substance for sales [of]
22       heroin and methamphetamines.

23   (TAC Exh. C). The Form indicates that the confidential source(s)
     were considered reliable because they "previously provided
24   confidential information which proved to be true," and because
     "[p]art of the information provided [was] corroborated through
25   investigation or by information provided by non-confidential
     sources." (TAC Exh. C). In addition, the Form notes that the
26   documentation for the confidential information was located in
     confidential memoranda authored by Nunez, dated September 10, 2018,
27   and January 4 and 18, 2019, and a "confidential debrief" by Sgt.
28   Zermeno, dated December 3, 2018. (TAC Exh. C).

controlled substances.  (TAC at 21; TAC Exh. D).  On May 28, 2019, Defendant Associate Warden Moore, the chief disciplinary officer, confirmed the sanctions and penalties, including 180 days of lost credits, 10 days confined to quarters, and the temporary loss of various privileges.  (TAC at 22; TAC Exh. D).

Plaintiff submitted administrative appeals claiming that Defendants Nunez, Zermeno, Frias, Gasgonia, and Chief Deputy Warden Smith conspired to violate his rights in these disciplinary proceedings.  (TAC at 24-25; TAC Exh. A).  Defendants Cota and Smith denied the appeal at the second level on July 17, 2019, and Defendant Liu denied the third-level appeal on November 1, 2019. (TAC at 24-25; TAC Exh. B).

The following January, Plaintiff was again subjected to a disciplinary charge.  According to Plaintiff, a team of ISU and Institutional Gang Investigations unit ("IGI") officers "simultaneously" removed about twenty inmates, including Plaintiff, from their cells for searching and questioning in the early morning hours on January 23, 2020.  (TAC at 22).  Defendant Wilson searched Plaintiff's cell that morning and purportedly found and confiscated two cell phones and chargers, for which Plaintiff was subsequently charged with a rule violation (RVR Log No. 6959996, or "2020 RVR").  (TAC at 22; TAC Exh. F).  At the disciplinary hearing on February 4, 2020, Plaintiff denied possessing the phone, and the testimony of several inmate witnesses revealed a discrepancy in the time of the search as recorded on the RVR.  (TAC at 22-23; TAC Exh. F).  The presiding hearing

officer, Defendant Lt. Zavala, found Plaintiff not guilty based on the inconsistent time recorded on the RVR and the officers' failure to follow proper evidence procedures.  (TAC at 23; TAC Exh. F).

Plaintiff asserts that this "coordinated institutional raid" on January 23, 2020, "was directed, planned, orchestrated, implemented and/or approved by" Defendants Diaz, Macomber, Gipson, Lozano, Moseley, Stinson, McDowell, and Smith (all of whom are sued solely in their official capacity, as noted above).[9]  (TAC at 25; see TAC 4-7).  He states that this was carried out "to enforce an underground policy of retaliation against 'targeted' state prisoners," including Plaintiff.  (TAC at 25-26).  He claims that these Defendants thus violated his rights under the "Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1985."  (TAC at 25).  He further claims that these Defendants violated California's Information Practices Act (Cal. Civ. Code, § 1798 et seq.) by causing "manufactured, falsified documents" to be placed in Plaintiff's file.[10]  (TAC at

_____

[9] Plaintiff later states that "all other named Defendants[] in this cause of action are named in their individual capacities." (TAC at 26).  However, Plaintiff's list of Defendants includes three other Defendants sued solely in their official capacity: Martin, Cota, and Moore.  (See TAC at 7, 11-12).

[10] This state law provides, in relevant part, that a person may bring a civil action for damages and injunctive relief against an agency whenever such agency "[f]ails to maintain any record concerning any individual with such accuracy, relevancy, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, opportunities of, or benefits to the individual that may be made on the basis of such record, if, as a proximate result of such failure, a determination is made which is adverse to the individual."  Cal. Civ. Code §§ 1798.45(b), 1798.47, 1798.48.

26).   Plaintiff states that he sues these Defendants in their official capacities for declaratory and injunctive relief "for the removal of [the 2019 RVR]."  (TAC at 26).  Plaintiff also seeks punitive damages from these Defendants.  (TAC at 26).

Plaintiff claims that the other Defendants who are sued in their individual capacities (Liu, Frias, Lt. Gasgonia, Sgt. Zermeno, Striplin, Nunez, Wilson, and Montgomery) violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments by participating in an "effort to fabricate, falsify, manufacture and present inaccurate, untruthful and unreliable documentation and false physical evidence" against Plaintiff.  (TAC at 26-27; see TAC 8-12).  He seeks compensatory and punitive damages from these "second tier Defendants."  (TAC at 27).

**STANDARD OF REVIEW**

Congress mandates that district courts initially screen civil complaints filed by prisoners seeking redress from a governmental entity or employee.  28 U.S.C. § 1915A.  A court may dismiss such a complaint, or any portion thereof, if the court concludes that the complaint: (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief from a defendant who is immune from such relief.  Id. § 1915A(b); see also id. § 1915(e)(2) (The court "shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary

relief against a defendant who is immune from such relief.");
accord Lopez v. Smith, 203 F.3d 1122, 1126–27 & n.7 (9th Cir. 2000)
(en banc).  In addition, dismissal may be appropriate if a complaint
violates Rule 8 of the Federal Rules of Civil Procedure. McHenry
v. Renne, 84 F.3d 1172, 1179 (9th Cir. 1996); Nevijel v. Northcoast
Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

In considering whether to dismiss a complaint, a court is
generally limited to the pleadings and must construe "[a]ll factual
allegations set forth in the complaint . . . as true and . . . in
the light most favorable" to the plaintiff.  Lee v. City of Los
Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted).
Moreover, pro se pleadings are "to be liberally construed" and
"held to less stringent standards" than those drafted by a lawyer.
Erickson, 551 U.S. at 94 (citation omitted); see also Hebbe v.
Pliler, 627 F.3d 338, 342 (9th Cir. 2010) ("Iqbal incorporated the
Twombly pleading standard and Twombly did not alter courts'
treatment of pro se filings; accordingly, we continue to construe
pro se filings liberally when evaluating them under Iqbal.").
Nevertheless, dismissal for failure to state a claim can be
warranted based on either the lack of a cognizable legal theory or
the absence of factual support for a cognizable legal theory.
Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th
Cir. 2008).

1

**DISCUSSION**

2

3      Plaintiff's Third Amended Complaint warrants dismissal for

4   violation of Federal Rule of Civil Procedure 8, failure to state a

5   claim for relief, and other deficiencies discussed below.  Leave

6   to amend is granted, however, because it is not "absolutely clear

7   that the deficiencies of the complaint could not be cured by

8   amendment."  Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012).

9

10  **A.    The Third Amended Complaint Violates Federal Rule of Civil**

11  **Procedure 8**

12

13      Rule 8 governs how to plead claims in a complaint.

14   Specifically, Rule 8(a) requires that a complaint contain "'a short

15   and plain statement of the claim showing that the pleader is

16   entitled to relief,' in order to 'give the defendant fair notice

17   of what the . . . claim is and the grounds upon which it rests.'"

18   Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting

19   Fed. R. Civ. P. 8(a)).  To comply with Rule 8, moreover, each

20   allegation of a complaint must be "simple, concise, and direct,"

21   Fed. R. Civ. P. 8(d)(1), though conclusory allegations are

22   insufficient.  See Ashcroft v. Iqbal, 556 U.S. 662, 678, 686 (2009).

23   A complaint is subject to dismissal for violating Rule 8 if "one

24   cannot determine from the complaint who is being sued, for what

25   relief, and on what theory."  McHenry v. Renne, 84 F.3d 1172, 1178

26   (9th Cir. 1996).

27

28

Plaintiff's Third Amended Complaint violates Rule 8 because it fails to give Defendants fair notice of the claims being asserted and the grounds on which each claim rests.  Instead, the Third Amended Complaint includes several pages of factual allegations (see TAC at 15-25), followed by general assertions that Defendants violated various constitutional rights (see TAC at 25, 27), but Plaintiff never clearly states how each individual Defendant violated each of these rights.  For example, Plaintiff claims that all the Defendants who are sued in their individual capacities – i.e., Defendants (1) Liu, (2) Frias, (3) Lt. Gasgonia, (4) Sgt. Zermeno, (5) Striplin, (6) Nunez, (7) Wilson, and (8) Montgomery (see TAC 8-12) - violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights by participating in an "effort to fabricate, falsify, manufacture and present inaccurate, untruthful and unreliable documentation and false physical evidence" against Plaintiff.  (TAC at 26-27).  However, these Defendants each have different duties and responsibilities in the prison, and they each had a different role in the alleged circumstances.  Moreover, each of these constitutional amendments encompasses different legal rights, with distinct requirements.  The Fourteenth Amendment, for example, encompasses rights to due process and equal protection, among other rights.  Without further clarification, each Defendant would be unable to discern which rights he or she is alleged to have violated, and what he or she allegedly did to violate such rights.[11]

_____

[11]It is also unclear whether Plaintiff intends to assert claims under other constitutional provisions that are not specifically

1     The Third Amended Complaint thus warrants dismissal, with

2 leave to amend, for violation of Rule 8 because it deprives

3 Defendants of fair notice of who is being sued, for what conduct,

4 and on what legal grounds.  See <u>McHenry</u>, 84 F.3d at 1178.  To

5 remedy this problem, Plaintiff must, at a minimum, separate each

6 legal predicate into a separate claim and expressly identify which

7 Defendant(s) are sued in each claim, and which allegations are at

8 issue in each claim.

9

10 **B.  The Fifth and Sixth Amendments Are Inapplicable Here**

11

12     As noted above, Plaintiff asserts that Defendants violated

13 his rights under the Fifth and Sixth Amendments, though he does

14 not specify what allegations are being offered to support such

15 claims.  Regardless, these constitutional provisions have no

16 apparent relevance to this action.

17

18

19

―――――――――――――――

20 mentioned in the Third Amended Complaint. In particular, Plaintiff
appears to claim that Defendants' actions were part of an effort

21 to "retaliate" against him for being a class member in the <u>Ashker</u>
litigation and for filing other lawsuits against CDCR officials.

22 (See TAC at 17-18, 24-26). However, Plaintiff never indicates that

23 he is asserting a First Amendment retaliation claim. See <u>Rhodes
v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005) ("Within the

24 prison context, a viable claim of First Amendment retaliation
entails five basic elements: (1) An assertion that a state actor

25 took some adverse action against an inmate (2) because of (3) that
prisoner's protected conduct, and that such action (4) chilled the

26 inmate's exercise of his First Amendment rights, and (5) the action

27 did not reasonably advance a legitimate correctional goal.")
(footnote and citation omitted).  If Plaintiff intends to do so,

28 he must clarify this.

The "Fifth Amendment's Due Process and Equal Protection Clauses apply only to the federal government, not to state actors." Peoples v. Schwarzenegger, 402 F. App'x 204, 205 (9th Cir. 2010); see also Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001); Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008). Because all the Defendants in this action are state actors, any due process or equal protection claims are asserted pursuant to the Fourteenth Amendment.

The Sixth Amendment, on the other hand, applies only to criminal prosecutions.  Because a prison disciplinary proceeding is not a criminal proceeding, the Sixth Amendment is inapplicable to any of Plaintiff's allegations.  Cook v. Solorzano, 2019 WL 1367808, at *5 (E.D. Cal. Mar. 26, 2019) (Sixth Amendment not applicable to prison disciplinary proceedings); Killensworth v. Godfrey, 2019 WL 5455717, at *7 (C.D. Cal. Oct. 24, 2019) (no Sixth Amendment right to confront and cross-examine witnesses at prison disciplinary hearing); see also Wolff v. McDonnell, 418 U.S. 539, 556 (1974) ("Prison disciplinary proceedings are not a part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings do not apply.").

Accordingly, Plaintiff cannot state any claims under the Fifth and Sixth Amendments.

1    **C.    Plaintiff Fails to State an Eighth Amendment Claim**

2

3        The Third Amended Complaint cites that Eighth Amendment, but
4    it offers no facts to support a claim under this provision.  The
5    Eighth Amendment's prohibition against cruel and unusual punishment
6    protects prisoners from inhumane conditions of confinement.  Morgan
7    v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer
8    v. Brennan, 511 U.S. 825, 832 (1994)).  Prison officials therefore
9    have a "duty to ensure that prisoners are provided adequate
10   shelter, food, clothing, sanitation, medical care, and personal
11   safety."  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).  A
12   prison official violates the Eighth Amendment by failing to ensure
13   inmate safety when:  (1) an inmate is incarcerated under conditions
14   posing "a substantial risk of serious harm"; and (2) the prison
15   official deliberately "disregards the risk by failing to take
16   reasonable measures to abate it."  Farmer, 511 U.S. at 837, 847;
17   Hearns v. Terhune, 413 F.3d 1036, 1040-42 (9th Cir. 2005).

18

19       Here, Plaintiff does not allege that Defendants caused him to
20   be subjected to a substantial risk of serious harm or otherwise
21   denied the "minimal civilized measure of life's necessities."  See
22   Farmer, 511 U.S. at 834.  Although Plaintiff alleges that he was
23   sent to administrative segregation, he fails to include any facts
24   about such conditions to show that they were cruel or inhumane in
25   any respect.  See also Shotwell v. Brandt, 2012 WL 6569402, at *3
26   (N.D. Cal. Dec. 17, 2012) ("[T]he usual hardships associated with
27   administrative segregation do not violate the Eighth Amendment.")
28   (citing Toussaint v. Yockey, 722 F.2d 1490, 1494 n. 6 (9th Cir.

1   1984); <u>Anderson v. County of Kern</u>, 45 F.3d 1310, 1315–16 (9th Cir.

2   1995)).   Moreover, while Plaintiff alleges that he was punished

3   with a ten-day loss of "yard recreation privileges" among other

4   sanctions (TAC at 22), a short-term loss of outdoor exercise does

5   not rise to an Eighth Amendment violation.   Compare <u>Keenan v. Hall</u>,

6   83 F.3d 1083, 1089–90 (9th Cir. 1996) (denial of outdoor exercise

7   for six months while in segregation sufficient to proceed to trial

8   on Eighth Amendment claim), <u>with</u> <u>May v. Baldwin</u>, 109 F.3d 557, 565-

9   66 (9th Cir. 1997) (temporary, twenty-one day denial of outdoor

10  exercise, with no medical effects, is not a substantial deprivation

11  under the Eighth Amendment).   Accordingly, Plaintiff fails to state

12  an Eighth Amendment claim against Defendants.

13

14  **D.   Plaintiff Fails to State a Discrimination Claim Under the**

15       **Equal Protection Clause or 42 U.S.C. § 1985**

16

17       Plaintiff appears to assert claims of discrimination under

18  the Equal Protection Clause, as well as 42 U.S.C. § 1985.   (See

19  TAC 1, 13, 25).   Such claims fail, however, because Plaintiff does

20  not demonstrate that Defendants' actions against him had an

21  impermissibly discriminatory motive.

22

23       The Equal Protection Clause requires that persons who are

24  similarly situated be treated alike.   <u>City of Cleburne v. Cleburne</u>

25  <u>Living Center, Inc.</u>, 473 U.S. 432, 439 (1985).   A plaintiff may

26  establish an equal protection claim by showing that the plaintiff

27  was intentionally discriminated against on the basis of the

28  plaintiff's membership in a protected class, such as race.   See,

17

1    e.g., Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir.

2    2005); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.

3    2001). "[N]either prisoners nor 'persons convicted of crimes'

4    constitute a suspect class for equal protection purposes." United

5    States v. Whitlock, 639 F.3d 935, 941 (9th Cir. 2011) (citations

6    omitted). Plaintiff does not allege that he was ever subjected to

7    discrimination on the basis of race or any other protected class.

8

9        If the actions in question do not involve a suspect

10   classification, a plaintiff may establish an equal protection claim

11   by showing that similarly situated individuals were intentionally

12   treated differently without a rational relationship to a legitimate

13   state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564

14   (2000); San Antonio School District v. Rodriguez, 411 U.S. 1

15   (1972). To state an equal protection claim under this theory, a

16   plaintiff must allege that: (1) the plaintiff is a member of an

17   identifiable class; (2) the plaintiff was intentionally treated

18   differently from others who were similarly situated; and (3) there

19   is no rational basis for the difference in treatment. Village of

20   Willowbrook, 528 U.S. at 564.

21

22       Here, Plaintiff appears to claim that Defendants discriminated

23   against him as a participant in the Ashker hunger strike and

24   litigation. (See TAC at 13, 17-18, 22). However, aside from

25   conclusory allegations that he and others were "targeted" for

26   disciplinary violations, he fails to provide any facts that raise

27   a plausible inference that Defendants' actions had a discriminatory

28   motive – i.e., that Defendants subjected Plaintiff to disciplinary

citations or other harms *because of* his involvement in the hunger strike.  It is not enough to allege merely that Plaintiff and many other inmates were subjected to cell searches and questioning on a particular day.  Instead, to show discrimination, Plaintiff would need to allege facts showing that Defendants treated him differently from other, similarly situated inmates who had not participated in the hunger strike.

Because Plaintiff's allegations fail to demonstrate a discriminatory motive, he also fails to state a claim under § 1985, which generally requires, among other things, allegations of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971); see also Caldeira v. Cty. of Kauai, 866 F.2d 1175, 1182 (9th Cir. 1989) ("The absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations.").  The Ninth Circuit has "extended [§ 1985(3)] beyond race only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights." Schultz v. Sundberg, 759 F.2d 714, 718 (9th Cir.1985) (internal quotation marks omitted).  "There are only two ways to show such a governmental determination: 'we require either that the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection.'" Denney v. Drug Enf't Admin., 508 F. Supp. 2d 815,

836 (E.D. Cal. 2007) (quoting Shultz, 759 F.2d at 718; see also RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1056 (9th Cir. 2002) (plaintiffs under § 1985(3) must show "that they are members of a class that the government has determined 'requires and warrant[s] special federal assistance in protecting their civil rights'") (quoting Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992)).  The Third Amended Complaint is devoid of any allegations that Plaintiff belongs to a protected class, and there are no allegations that Defendants were motivated by a racial or class-based, invidiously discriminatory animus.  The absence of an invidiously discriminatory animus on the part of Defendants is fatal to Plaintiff's § 1985 claim.

**E.**   **The Third Amended Complaint Fails to State a Due Process Claim Against Defendants Striplin, Frias, Gasgonia, Liu, Wilson, and Montgomery**

**1.   Applicable Law**

"To obtain relief on § 1983 claims based upon procedural due process, the plaintiff must establish the existence of (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process." Guatay Christian Fellowship v. Cnty. of San Diego, 670 F.3d 957, 983 (9th Cir. 2011) (citation and alterations omitted). Thus, "[t]he first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" American Mfrs. Mut. Ins. Co. v.

Sullivan, 526 U.S. 40, 59 (1999); see also Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.").

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556; Ponte v. Real, 471 U.S. 491, 495 (1985). Rather, the Supreme Court has held that, in the context of prison disciplinary hearings, due process requires only certain procedural safeguards: (1) the inmate should receive "advance written notice of the claimed violation" so the inmate can marshal the facts and prepare a defense; (2) "[a]t least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare" for the hearing; (3) the inmate "should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"; (4) "[w]here an illiterate inmate is involved, . . . or [where] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case," the inmate should be given assistance at the hearing; and (5) the inmate should receive "a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action taken." Wolff, 418 U.S. at 563-70 (citation omitted). Additionally, inmates are entitled to a fair and impartial decisionmaker at

disciplinary hearings, see Edwards v. Balisok, 520 U.S. 641, 647 (1997) ("The due process requirements for a prison disciplinary hearing are in many respects less demanding than those for criminal prosecution, but they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence."), and "the requirements of due process are satisfied if some evidence supports the [disciplinary] decision," Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985); Burnsworth v. Gunderson, 179 F.3d 771, 773 (9th Cir. 1999).

"Due process guarantees [an inmate] that the evidence used to validate him meet the 'some evidence' evidentiary standard." Castro v. Terhune, 712 F.3d 1304, 1314 (9th Cir. 2013). This "minimally stringent" test requires a federal court to determine "only whether there is any evidence in the record that could support the conclusion." Id. (emphasis in original). Accordingly, the court does "not examine the entire record, independently assess witness credibility, or reweigh the evidence; rather, 'the relevant question is whether there is any evidence in the record that could support the conclusion.'" Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Hill, 472 U.S. at 455-56). "Evidence only must bear some indicia of reliability to be considered 'some evidence.'" Castro, 712 F.3d at 1314 (citation omitted). Further, evidence may qualify as "some evidence" even where it does not "logically preclude[] any conclusion but the one reached by the disciplinary board." Hill, 472 U.S. at 457.

A prison disciplinary committee's determination that rests upon confidential information satisfies due process if "(1) the record contains some factual information from which the committee can reasonably conclude that the information was reliable, and (2) the record contains a prison official's affirmative statement that safety considerations prevent the disclosure of the informant's name." Zimmerlee, 831 F.2d at 186. "Review of both the reliability determination and the safety determination should be deferential." Id. "Reliability may be established by: (1) the oath of the investigating officer appearing before the committee as to the truth of his report that contains confidential information, (2) corroborating testimony, (3) a statement on the record by the chairman of the committee that he had firsthand knowledge of sources of information and considered them reliable based on the informant's past record, or (4) an in camera review of the documentation from which credibility was assessed." Id. at 186–87. "Proof that an informant previously supplied reliable information is sufficient." Id. at 187.

## 2.   Analysis

Although unclear, Plaintiff's Third Amended Complaint appears to claim that Defendants violated due process by "participating in [an] individual, collective, joint effort to fabricate, falsify, manufacture and present inaccurate, untruthful and unreliable documentation and false physical evidence against Plaintiff." (TAC at 13, 27). However, to state claims against Defendants in their individual capacities, Plaintiff must allege facts showing how each

Defendant personally caused a violation of Plaintiff's rights.  See Hines v. Youseff, 914 F.3d 1218, 1228 (9th Cir. 2019) ("[T]he inmates must show that each defendant personally played a role in violating the Constitution.  An official is liable under § 1983 only if 'culpable action, or inaction, is directly attributed to them.'") (footnotes and citations omitted); OSU Student Alliance v. Ray, 699 F.3d 1053, 1069 (9th Cir. 2012) (a government official may be held liable in his or her individual capacity under § 1983 only "for his or her own misconduct") (quoting Iqbal, 556 U.S. at 676).   Allegations regarding § 1983 causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted).

Here, Plaintiff sues eight different Defendants in their individual capacities – Nunez, Zermeno, Striplin, Frias, Gasgonia, Liu, Wilson, and Montgomery.  (See TAC at 8-12).  However, aside from Nunez and Zermeno, Plaintiff fails to allege sufficient facts showing how these individual Defendants violated his due process rights.

First, Defendants Wilson and Montgomery did not cause a due process violation because they were involved solely in the 2020 RVR matter, for which Plaintiff was subsequently found not guilty and thus suffered no constitutional deprivation. (See TAC at 22-24); see also Shotwell v. Brandt, 2012 WL 6569402, at *2 (N.D. Cal. Dec. 17, 2012) (no due process violation where the RVR was

1   ultimately dismissed, as "[a] prisoner has no constitutionally

2   guaranteed immunity from being falsely or wrongly accused of

3   conduct which may result in the deprivation of a protected liberty

4   interest") (citing <u>Sprouse v. Babcock</u>, 870 F.2d 450, 452 (8th Cir.

5   1989); <u>Freeman v. Rideout</u>, 808 F.2d 949, 951 (2d Cir. 1986)).

7       Second, as for Defendants Striplin, Frias, Gasgonia, and Liu,

8   Plaintiff fails to allege that they ever knowingly caused Plaintiff

9   to be disciplined based on false or unreliable evidence, or that

10  they otherwise prevented Plaintiff from adequately defending

11  against the disciplinary charges in any respect.  For example,

12  Plaintiff alleges that Officer Striplin was involved in handling

13  and assessing the drugs underlying the 2019 RVR charge, and that

14  Lt. Frias "approved" Officer Nunez's "falsified [2019] RVR," but

15  there is no indication that either Defendant knew or should have

16  known that false or unreliable evidence was being used against

17  Plaintiff in the matter.  Furthermore, while Lt. Gasgonia, the

18  presiding disciplinary hearing officer, was responsible for

19  assessing the evidence against Plaintiff, <u>see</u> <u>Zimmerlee</u>, 831 F.2d

20  at 186, Plaintiff does not specify any way in which Gasgonia

21  neglected to fulfill that duty, nor is any due process violation

22  apparent on the face of the hearing report, as the Court has

23  previously explained.[12]  (<u>See</u> Dkt. No. 32 at 12-20; Dkt. No. 37 at

24      _____

25      [12] The disciplinary hearing report regarding the 2019 RVR
    states that the confidential memoranda were all reviewed by the
26  hearing officer and were deemed reliable on several grounds,
    including because other confidential sources independently
27  provided the same information, the confidential information was
    self-incriminating, and/or the investigation corroborated part of
28  the confidential information.  (<u>See</u> TAC Exh. D at 4-9).  On its

15-19).  Finally, Defendant Liu appears to have participated solely by denying an administrative appeal regarding the 2019 RVR (TAC at 25), which does not render him liable for a due process violation. See Fiorito v. Anderson, 2019 WL 1602176, at *3 (C.D. Cal. Apr. 10, 2019) ("Courts in this circuit generally agree that denying an inmate appeal does not, by itself, lead to liability.") (collecting cases).

Accordingly, Plaintiff fails to state a due process claim against Defendants Striplin, Frias, Gasgonia, Liu, Wilson, and Montgomery.[13]

---

face, this would appear to suffice under Zimmerlee. See, e.g., Servin v. Hill, 2014 WL 6612028, at *9 (E.D. Cal. Nov. 20, 2014) (disciplinary committee sufficiently established reliability of confidential information by finding that "other confidential source[s] had independently provided the same information," "the information provided by the source was self-incriminating," and "part of the information provided by the source was corroborated through investigation or information provided by non-confidential sources") (citing Zimmerlee, 831 F.2d at 186-87); Flores v. Lewis, 2013 WL 664658, at *5 (N.D. Cal. Feb. 21, 2013) (same).  To the extent Plaintiff believes Lt. Gasgonia had a constitutional duty to assess the evidence further, or to provide Plaintiff any further opportunity to challenge the evidence against him in the proceedings, Plaintiff must clarify his allegations in that regard.

[13] Although Plaintiff potentially states a claim against Defendants Nunez and Zermeno based on his allegations that these Defendants falsified evidence against him for use in the 2019 disciplinary proceeding (see TAC at 18-21), dismissal of the entire Third Amended Complaint, with leave to amend, is nonetheless warranted due to Plaintiff's failure to provide fair notice to any Defendant of the claims and allegations being asserted, as discussed above with respect to Rule 8.

**F.    Plaintiff's Official Capacity Claims Are Deficient**

    Official-capacity suits provide "another way of pleading an action against an entity of which an officer is an agent," which in this case is the CDCR, an agency of the State of California. Kentucky v. Graham, 473 U.S. 159, 165 (1985); Community House, Inc. v. City of Boise, Idaho, 623 F.3d 945, 966-67 (9th Cir. 2010) (an official capacity suit is treated as a suit against the entity). To state a claim against a state officer in his or her official capacity, Plaintiff must identify a custom, policy, or practice of the state or prison that is responsible for the alleged conduct. Gomez v. Vernon, 255 F.3d 1118, 1127 (9th Cir. 2001).

    Here, assuming that the Third Amended Complaint adequately states at least a due process claim against CDCR officials in their official capacity based on an alleged policy of using fabricated documents and other evidence to subject inmates such as Plaintiff to disciplinary sanctions in violation of due process (see TAC at 13, 25-26), Plaintiff's official-capacity claims are nonetheless deficient for the following reasons.

    First, Plaintiff seeks monetary relief in his claims against the official-capacity Defendants (see TAC at 4, 6), which is barred by the Eleventh Amendment.  Howlett v. Rose, 496 U.S. 356, 365 (1990) (Eleventh Amendment bars suits for damages against states and their official arms); Brown v. Cal. Dep't of Corr., 554 F.3d 747, 752 (9th Cir. 2009) ("The State of California has not waived its Eleventh Amendment immunity with respect to claims brought

under § 1983 in federal court, and the Supreme Court has held that § 1983 was not intended to abrogate a State's Eleventh Amendment immunity."). Only prospective injunctive relief is available against officers sued in their official capacity. See Doe v. Lawrence Livermore Nat. Lab'y, 131 F.3d 836, 839 (9th Cir. 1997) ("In what has become known as part of the Ex parte Young doctrine, a suit for prospective injunctive relief provides a narrow, but well-established, exception to Eleventh Amendment immunity.") (citing Ex parte Young, 209 U.S. 123 (1908)).

Second, Plaintiff inappropriately sues eleven different Defendants solely in their official capacity, including the Secretary of the CDCR and several other high-level CDCR officials, as well as the Warden and other supervisory officials at Ironwood. (TAC at 4-7, 11-12). Because official-capacity claims are treated as a suit against the entity, naming multiple employees of the same agency is generally duplicative and redundant. See, e.g., Rosas v. Baca, 2012 WL 933609, at *2 (C.D. Cal. Mar. 20, 2012) (dismissing claims against three of four individual defendants sued in their official capacities as duplicative); Thomas v. Baca, 2006 WL 132078, at *1 (C.D. Cal Jan. 13, 2006) (dismissing claims against six of seven individual defendants sued in their official capacities as duplicative).

Official-capacity claims for injunctive relief are appropriate only against officers who have the authority to

implement the requested relief.[14]   See Hodgins v. Woodford, 2006 WL 2482423, at *2 (E.D. Cal. Aug. 28, 2006) ("It is not necessary to name multiple defendants in their official capacity.   Plaintiff need only name that official who has some cognizance over the policy at issue and who could effectively issue orders within CDCR if the court were to rule in plaintiff's favor."); Santos Garcia v. San Bernardino Sheriff's Dep't, 2020 WL 8365260, at *5 (C.D. Cal. Dec. 8, 2020) ("[T]o pursue prospective injunctive relief, [the plaintiff] must identify a specific [department] official in his or her official capacity who has a direct connection to the action that Plaintiff wishes to enjoin."); see also Rouser v. White, 707 F. Supp. 2d 1055, 1066 (E.D. Cal. 2010) (the proper defendant for injunctive relief in suit seeking implementation of CDCR policy is CDCR Secretary in his official capacity, while the proper defendant to implement institution-specific policy is prison warden in his official capacity).   In any amended complaint, therefore, Plaintiff should name in their official capacity only

---

[14] Relatedly, officers sued solely in their official capacity do not need to have had any personal involvement in the acts that allegedly violated Plaintiff's rights.   See, e.g., Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1127 (9th Cir. 2013) ("A plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation.") (citing Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985)).   What matters is that the named official can implement the requested injunctive relief, in the event such relief is granted in the case.   For that reason, as noted above, the current Secretary of the CDCR, Kathleen Allison, should be substituted for Ralph Diaz, who no longer serves in that role.   See Fed. R. Civ. P. 25(d).

those officers who have the authority to implement the injunctive relief that Plaintiff seeks in this case.

**CONCLUSION**

For the reasons discussed above, the Court DISMISSES Plaintiff's claims WITH LEAVE TO AMEND.

If Plaintiff still wishes to pursue this action, he shall file a Fourth Amended Complaint no later than 30 days from the date of this Order.  The Fourth Amended Complaint must cure the pleading defects discussed above and shall be complete in itself without reference to prior pleadings.  See L.R. 15-2 ("Every amended pleading filed as a matter of right or allowed by order of the Court shall be complete including exhibits.  The amended pleading shall not refer to the prior, superseding pleading.").  This means that Plaintiff must allege and plead any viable claims again.

In any amended complaint, Plaintiff should identify the nature of each separate legal claim and confine his allegations to those operative facts supporting each of his claims.  For each separate legal claim, Plaintiff should state the civil right that has been violated and the supporting facts for that claim only.  Pursuant to Federal Rule of Civil Procedure 8(a), all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief."  However, Plaintiff is advised that the allegations in the Fourth Amended Complaint should be consistent with the authorities discussed above.  In addition, the Fourth

Amended Complaint may not include new defendants or claims not reasonably related to the allegations in the previously filed complaints.   Plaintiff is strongly encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.

Plaintiff is explicitly cautioned that failure to timely file a Fourth Amended Complaint, or failure to correct the deficiencies described above, may result in a recommendation that this action, or portions thereof, be dismissed with prejudice for failure to prosecute and/or failure to comply with court orders.  See Fed. R. Civ. P. 41(b); Applied Underwriters, Inc. v. Lichtenegger, 913 F.3d 884, 891 (9th Cir. 2019) ("The failure of the plaintiff eventually to respond to the court's ultimatum - either by amending the complaint or by indicating to the court that it will not do so - is properly met with the sanction of a Rule 41(b) dismissal." (emphasis omitted; quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065 (9th Cir. 2004))).

//

//

//

1    Plaintiff is further advised that if he no longer wishes to
2    pursue this action in its entirety or with respect to particular
3    defendants or claims, he may voluntarily dismiss all or any part
4    of this action by filing a Notice of Dismissal in accordance with
5    Federal Rule of Civil Procedure 41(a)(1).   A form Notice of
6    Dismissal is attached for Plaintiff's convenience.

7

8    **IT IS SO ORDERED.**

9

10   Dated:   December 28, 2021

11

12                                              /s/
                                        ALKA SAGAR
13                          UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28